UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| COMMERCIAL RISK REINSURANCE COMPANY, | § § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 3:08-CV-2038-B |
| TEXAS PROPERTY AND CASUALTY INSURANCE GUARANTEE ASSOCIATION, | § § § § § | |
| Defendant. | § | |

### MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Texas Property and Casualty Insurance Guarantee Association's Motion to Dismiss, filed March 12, 2009 (doc. 5). At issue is whether the Court has jurisdiction over Plaintiff Commercial Risk Reinsurance Company's declaratory judgment action. Finding no actual controversy under 28 U.S.C § 2201, the Court **GRANTS** Texas Property and Casualty Insurance Guarantee Association's Motion to Dismiss.

### I.

### BACKGROUND

This declaratory judgment action involves a dispute over insurance coverage stemming from a 1994 fatal car accident in South Carolina. (Pl.'s Original Compl. ¶ 5.) The driver of one of the vehicles involved was an employee for TIC United Corporation (hereinafter, "TIC"). (*Id.*) Following the accident, representatives of the three decedents initiated a civil action in South Carolina state court (hereinafter, "South Carolina lawsuit") against TIC and its employee. (*Id.*)

Fifteen years later, the South Carolina lawsuit is still pending. (*Id.*)

By way of background, TIC had an insurance policy with Planet Insurance Company which covered automobile liability losses. (*Id.* ¶ 6.) It also had a Deductible Payment Indemnity Contract (hereinafter, the "Indemnity Contract") with Plaintiff Commercial Risk Reinsurance Company (hereinafter, "Commercial Risk") which covered TIC's automobile liability policy with Planet Insurance Company. (*Id.* ¶ 9.) Under the terms of the Indemnity Contract, Commercial Risk is required to indemnify TIC for up to $1,000,000 in commercial automobile losses. (*Id.* ¶ 10.) In November 2008, Commercial Risk, filed this suit seeking a declaratory judgment that it has no obligation to continue defending the South Carolina lawsuit once it exhausts its $1,000,000 contractual limit. In accordance of the Indemnity Contract, Commercial Risk alleges it has expended over $700,000 in defense costs for TIC since the inception of the South Carolina lawsuit. (*Id.* ¶ 13.) Furthermore, Commercial Risk claims that since Reliance Insurance Company, the parent company of Planet Insurance Company, filed for bankruptcy in 2001, Defendant Texas Property and Casualty Insurance Guarantee Association (hereinafter, "TPCIGA") is responsible for any amount in excess of $1,000,000.

TPCIGA filed the instant Motion to Dismiss for Lack of Subject Matter Jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). The Motion being ripe, the Court now turns to the merits of its decision.

## II.

### LEGAL STANDARDS

A court must dismiss a case for lack of subject matter jurisdiction under Rule 12(b)(1) where it lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Miss.,*

*Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). The Fifth Circuit recognizes that a party moving for dismissal under Rule 12(b)(1) may bring either a "facial" or "factual" attack on the existence of subject matter jurisdiction. *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. 1981). Facial attacks are those which challenge the sufficiency of the jurisdictional allegations contained in the pleadings. *Id.* Factual attacks, on the other hand, involve a direct denial by the moving party of the factual allegations. *Id.* at 412.

The type of challenge brought under Rule 12(b)(1) determines the scope of the court's inquiry. A facial attack limits the court's inquiry to the allegations within the complaint. It requires the court to accept those allegations as true and to view them in the light most favorable to the non-movant. *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980). In contrast, when analyzing a factual attack the trial court is permitted to consider matters beyond the pleadings. *Id.* In those instances, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id.* Thus, depending on whether the attack is facial or factual, a court may rely upon any one of three bases in making its decision: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Williamson*, 645 F.2d at 413.

Here, TPCIGA asserts that the Court lacks subject matter jurisdiction because the facts in the Complaint do not give rise to an actual case or controversy under Article III of the United States Constitution or the Declaratory Judgment Act. TPCIGA's challenge goes to the sufficiency of the jurisdictional allegations in Commercial Risk's Complaint and is therefore a facial attack. Accordingly, the Court will accept all material facts in the Complaint as true and construe them in

- 3 -

the light most favorable to Commercial Risk, as the non-movant.

## III.

## ANALYSIS

Under the Declaratory Judgment Act, a declaratory judgment action is only available in circumstances where an 'actual controversy' exists. *Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891, 896 (5th Cir. 2000). This requirement mirrors the 'case or controversy' requirement of Article III. *Id.* (citing *Texas v. West Publ'g Co.*, 882 F.2d 171, 175 (5th Cir. 1989)). As such, in determining whether a declaratory judgment action is based on an actual controversy, the Court must inquire "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941). Making this determination is often difficult, as "[t]he difference between an abstract question and a 'controversy' contemplated by the Declaratory Judgment Act is necessarily one of degree". *Id.*

Here, Commercial Risk moves the Court to declare that once it exhausts the $1,000,000 limit under the Indemnity Contract, it bears no further liability in the South Carolina lawsuit. It contends that TPCIGA will be responsible for any defense costs which exceed this contractual amount. (Pl.'s Original Compl. ¶ 14.) Because TPCIGA has not guaranteed that it will assume this responsibility, Commercial Risk claims it is likely that litigation will ensue between the parties and argues that declaratory relief is proper.

In certain cases, the threat of litigation is sufficient to establish a controversy which warrants

declaratory relief. *Orix*, 212 F.3d at 897. However, the threat must be specific and concrete. *Id.* While the fact that litigation is contingent on certain factors will not defeat jurisdiction, a court must carefully evaluate the likelihood that the contingencies will occur. *Id.; see also Chevron U.S.A., Inc. v. Traillour Oil Co.*, 987 F.2d 1138, 1153 (5th Cir. 1993) (explaining that "the ripeness inquiry focuses on whether an injury that has not yet occurred is sufficiently likely to happen to justify judicial intervention").

For example, in *Orix* the Fifth Circuit found that the dispute which the plaintiff sought to have resolved was "largely, if not purely, hypothetical" and thus held that declaratory relief was not proper. *Orix*, 212 F.3d at 896. There, the plaintiff argued that the potential for future litigation was sufficient to satisfy the actual controversy requirement. *Id.* In its analysis, the court found that whether or not there would be future litigation hinged on several contingencies and that there was insufficient evidence on the record to establish that these contingencies were likely to occur. *Id.* at 897. Therefore, it held that ruling on the complaint would be equivalent to issuing an advisory opinion. *Id.* at 898; *see also Life Partners, Inc. v. Life Ins. Co. of N. Am.*, 203 F.3d 324, 325 (5th Cir. 1999) ("Federal courts do not render advisory opinions.").

Similarly, in *Hillwood Development Co. v. Related Companies, Inc.,* No. 3:04-CV-1100-L, 2006 WL 1140472 (N.D. Tex. April 28, 2006), the court granted the defendant's motion to dismiss where it found that the threat of litigation was not sufficient to create an actual controversy. The plaintiff in *Hillwood* argued that a letter sent by the defendant stating that he had "no alternative but to pursue other avenues to enforce [his] rights" demonstrated a controversy between the parties substantial enough to warrant declaratory relief. *Id.* at *6. The trial court found otherwise, noting that the letter did not identify specific causes of action or indicate if and when a lawsuit would be

filed.  *Id.*  While the *Hillwood* court conceded that the parties had adverse legal interests, it held that the dispute was not grounded on a specific and concrete threat and, therefore, no actual controversy existed.  *Id.* at *7.

As in *Orix* and *Hillwood,* the factual allegations at hand do not give rise to an actual controversy under Article III or the Declaratory Judgment Act.  At this point, the risk of litigation between Commercial Risk and TPCIGA is based on conjecture. Initially, it is uncertain whether or not the policy limit will be exhausted before the South Carolina lawsuit is resolved.  At the time the Complaint was filed Commercial Risk had expended approximately $700,000 of the $1,000,000 limit set forth in the Indemnity Contract.  While the Court has reviewed the projected litigation budget provided by Commercial Risk, the estimates contained therein are simply speculations of what the costs *may* be, if and when they are incurred.  Furthermore, even accepting Commercial Risk's estimates, there is still a $34,000 gap between the projected expenses and the policy limit. Commercial Risk argues that the costs of an appeal and post-trial motions would complete this gap. However, there are no facts in the pleadings which suggest that an appeal is likely occur or that, if it does, it will cost in excess of $34,000.

It is also uncertain whether or not TPCIGA will refuse to pay the defense costs once Commercial Risk stops doing so.  Commercial Risk argues that TPCIGA has not guaranteed that it will take over the defense costs.  However, a refusal to guarantee future payment does not equate to a refusal to pay. Nothing in the pleadings suggests that TPCIGA is under a duty to guarantee payments which may or may not come due in the future.  Consequently, it is possible that TPCIGA will simply assume the responsibility of making the payments without the need for judicial intervention.  *See Hillwood,* 2006 WL 1140472, at * 7 (noting that parties engaged in "saber rattling"

will not always resort to litigation). Furthermore, there is no evidence that TPCIGA has threatened legal action, engaged in behavior which would support a fear of litigation, or has a history of litigation with Commercial Risk. On these facts, there is a strong likelihood that if there were to be a dispute regarding defense costs, it could be resolved without either party resorting to litigation.

Even accepting all of the factual allegations in Commercial Risk's Complaint as true, the threat of litigation in this action is insufficient to establish a controversy which warrants declaratory relief. *Orix*, 212 F.3d at 897. To find the threat of litigation sufficiently concrete to amount to a controversy from the allegations in Commercial Risk's complaint, several contingencies must occur: first, the South Carolina lawsuit must not be resolved pre-trial; second, the expenses incurred during trial must mirror or exceed those in the projected litigation budget; third, one of the parties in the lawsuit must choose to appeal the final verdict; fourth, the cost of the appeal and post-trial motions must exceed $34,000; fifth, TPCIGA must refuse to pay any defense costs incurred in the South Carolina lawsuit which exceed $1,000,000; and finally, TPCIGA must initiate a legal action against Commercial Risk demanding that it pay in excess of the $1,000,000 contractual limit.

Given the multitude of eventualities, and the improbability that they will all occur, the Court finds that the potential harm to Commercial Risk is too speculative to pose an immediate and real threat. *See, e.g., United Trans. Union v. Foster*, 205 F.3d 851, 858 (5th Cir. 2000) (finding no actual controversy where challenge to a statute rested "atop a mountain of conjecture and speculation"). Accordingly, the Court finds that Commercial Risk has not established, by a preponderance of the evidence, that this action is based on an actual controversy ripe for adjudication. Because the Court's resolution of this issue is dispositive, it declines to address TPCIGA's remaining arguments

## IV.

## CONCLUSION

For the foregoing reasons, the Court finds that there is no case or controversy between TPCIGA and Commercial Risk. Accordingly, the Court is without jurisdiction to settle this dispute and must **GRANT** Defendant TPCIGA's Motion to Dismiss in its entirety.

**SO ORDERED.**

**SIGNED December 18, 2009.**

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE